AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
4/28/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____MMC_____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT
April 28, 2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ch_____ DEPUTY

United States of America

v.

Jose Rosales Ramirez,

Defendant

Case No.  2:25-MJ-02514-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, Ani Ghaltakhchyan, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of April 6, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(5) | Alien in Possession of a Firearm |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Ani Ghaltakhchyan, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: April 28, 2025

[signature]
Judge's signature

City and state: Los Angeles, California

Hon. Brianna Mircheff, U.S. Magistrate Judge
Printed name and title

AUSA: Christina Marquez (x4061)

**AFFIDAVIT**

I, Ani Ghaltakhchyan, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for JOSE ROSALES RAMIREZ ("defendant"), for a violation of 18 U.S.C. § 922(g)(5), Alien in Possession of a Firearm.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, evidence in this matter, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I have been employed as a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since June of 2021. I am currently assigned to the ATF Glendale Field Office in Glendale, California. I am a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in federal laws and regulations. I regularly refer to these laws and regulations

during the course of my duties, and have participated in investigations, and the execution of warrants for violations of these laws and regulations.

### III. STATEMENT OF PROBABLE CAUSE

4.   Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

A.   **LASD Officers Responded to a Hit and Run, Traffic Collision, and Assault with a Deadly Weapon Service Call in Compton**

5.   According to a Los Angeles Sheriff's Department ("LASD") report, early in the morning on April 6, 2025, LASD Officers responded to a radio call for service regarding a Hit and Run, Traffic Collision, and an Assault with a Deadly Weapon service call near the intersection of Alondra Boulevard and Wilmington Avenue in Compton, California.  The service call indicated that an individual in a white Toyota sedan side swiped and shot at the victim.

6.   Upon arrival, LASD officers were flagged down by an unidentified Hispanic male adult ("V/1"), who was driving a white Ford Flex, bearing California license plate 8YPP948 (the "Ford Flex").  V/1 parked the Ford Flex on the southeast corner of Alondra Boulevard and Wilmington Avenue, got out of his car and identified himself as the person who called "911" for police assistance.  V/1 stated that the driver of a white Hyundai shot

approximately two to three times at his car.  V/1 saw the white Hyundai drive northbound on Center Avenue.[1]

7.   One of the victims from inside the Ford Flex ("V/2"), provided LASD Deputy Balangue with a video from their cellphone that captured the license plate of the suspect's vehicle.  LASD Deputy Balangue reviewed the footage and saw the following: an older model white Hyundai Elantra (CA license plate 7APB813) (the "Hyundai").  As LASD Deputy Soto was getting V/1's statements, multiple victims from inside the Ford Flex yelled, "It's that car," as they pointed to the Hyundai, which was driving on the street eastbound on Alondra Boulevard towards Center Avenue.

8.   LASD Deputy Balangue observed the Hyundai's rear passenger glass window was shattered consistent with the vehicle being involved in a shooting.  Multiple victims on the scene positively identified the Hyundai as it drove past the officers and the victims.

B.   **LASD Officers Initiated a Felony Traffic Stop**

9.   After the victims identified the Hyundai, LASD deputies inititated a felony traffic stop near the intersection of Alondra Boulevard and Willowbrook Avenue on the Hyundai they identified.

10.  LASD Deputy Balangue ordered the driver, later identified as defendant and the sole occupant, out of the Hyundai.  LASD deputies detained the defendant in the backseat

---

[1] During the encounter, others confirmed that there was only one occupant in the white Hyundai.

of their marked patrol vehicle pending an assault with a deadly weapon investigation.

11. As LASD Deputy Soto approached the Hyundai, he observed a black with brown TBZ 45mm caliber handgun wedged between the driver's side seat and the center counsel later found to be bearing serial number T062023Z06565. This firearm was loaded with 4 live rounds in the cartage and one in the chamber.

12. Law enforcement also found a gray with brown Springfield Armory 45mm caliber handgun later found to be bearing serial number: NM146927, loaded with 5 live rounds in the magazine and one live round in the chamber. Therefore, law enforcement found a total of 2 firearms and 11 live rounds in the Hyundai. Additionally, LASD Deputy Soto observed an expended 45mm caliber casing located on the driver's seat.

C. **Mirandized Interview of Defendant**

13. LASD Deputy Soto advised defendant of his Miranda Rights. Defendant stated that he understood his rights and agreed to speak to Deputy Soto without an attorney present.

14. Defendant stated he was driving home from a party. Defendant stated he did not get in a car accident that day. Defendant stated the vehicle belonged to his friend who let him borrow the vehicle for the past two days. When asked who the guns belonged to, the defendant stated he did not know the guns were in the car. Defendant later stated the vehicle belonged to him, which contradicted his initial statement that the car belonged to his friend. Defendant had recently bought the

vehicle from an unknown dealer and did not notice any firearms in the vehicle, nor the casing. Law Enforcement asked the defendant if at any point he shot the firearms, to which he said, "No." Deputy Balangue asked defendant if at any point he noticed the firearms, to which he said, "Probably yeah, I've seen one."

15. LASD Deputy Soto stated that after Miranda Rights were admonished, defendant spontaneously stated he was being followed by a white SUV while driving on Alondra Boulevard. Defendant described the driver as a male Hispanic adult, with a bald head. The driver of the white SUV pointed a gun at the defendant's car.

D. **Defendant Makes a Jail Call**

16. Defendant was placed under arrest and brought to jail. While in jail, defendant was authorized to use the telephone to make phone calls on a recorded line that admonishes individuals before they begin speaking that the calls could be monitored. Utilizing the Inmate Telephone Monitoring System, LASD Detective Lopez-Romero listened to a call made by defendant, who used his county issued booking number (6997631) as a unique pin, such that LASD could identify who was making the call.

17. On April 6, 2025, defendant made a call to 323-218-6306, which was answered by an unknown female. The conversation was in Spanish and was translated by Detective Lopez-Romero, who is fluent in the Spanish language:

| 01:42 (Female Receiving Call): "Hello?" |

| |
|---|
| 01:43 (Defendant): "Ma" |
| 01:44 (Female Receiving Call): "Mande." (Yes.) |
| 01:45 (Defendant): "Ma, me metieron en el bote." (Mom, they put me in jail.) |
| 01:48 (Female Receiving Call): "En donde?" (Where?) |
| 01:49 (Defendant): "Por que un vato me saco una pistola y me tiraron balazos y le tire a la verga paraatras. (Because this guy pulled out a gun and started shooting at me so I shot back at him.) |
| 01:52 (Female Receiving Call): "Lo balaciaste?" (You shot him?) |
| 01:57 (Defendant): "Pues si, me quiso balaciar y lo balacie a la verga." (Well yes, he wanted to shoot me so I shot him.) |
| 02:00 (Female receiving Call): "Y donde le diste?" (And where did you shoot him?) |
| 2:02 (Defendant): Pues no se en donde le haiga dado ma. Pero con la feria que le di, vaya, pageme una fianza porfa. Me van a mandar a la verga para Mexico." (Well, I don't know where I shot him. But with the money I gave you, can you go bail me out please. Or they are going to send me to Mexico.) |

E.  **Defendant is a Citizen of Mexico Who is Illegally Present in the United States**

18.  Based on information relayed to me by other law enforcement agents, on or about April 6, 2025, the ICE Pacific Enforcement Response Center ("PERC") received an electronic

notification based on biometric fingerprint information that defendant was in LASD's custody. On or about that day, the PERC lodged a Department of Homeland Security ("DHS") Immigration Detainer with LASD. Defendant was arrested by federal law enforcement on April 28, 2025, when he reported to a probation hearing related to the above-described conduct.

19. Based on the training and experience of Homeland Security Investigations ("HSI") SA Henry Blackwell, an alien is fingerprinted by DHS when, among other events, the alien applies for a United States visa or enters the United States or is arrested by federal law enforcement on immigration matters. The fingerprints are analyzed and assigned a unique fingerprint identifier. That unique fingerprint identifier number is then assigned to that unique fingerprint, and associated with the individual's DHS file, to allow for future verification of the same individual. I also know law enforcement typically obtains arrestees' fingerprints and engages in the same process and submits this information to be checked against various government databases to determine whether the individual has previously been identified. This way, if any future interactions with law enforcement result in fingerprints, law enforcement can compare the resulting fingerprint across many different documents to determine if it is the same person.

20. Based on the training and experience of SA Henry Blackwell, when PERC receives an electronic notification based on biometric fingerprint information from a law enforcement agency, it typically means that fingerprints taken by an

arresting agency generated a unique fingerprint identifier and compared it with various government documents, including immigration documents, to identify the individual.  In short, this is the way fingerprints taken after an arrest can be matched with fingerprints in a database that houses fingerprint data from individuals presenting themselves for inspection at the United States Border.

21. On or about April 22, 2025, SA Henry Blackwell reviewed immigration documents for defendant and learned that defendant is a Mexican citizen who arrived in the United States on or about November 12, 2011, in possession of a valid B1/B2 visa that expired on April 29, 2020.  Upon his arrival in the United States, defendant acknowledged that his visa allowed him to stay in the United States for six months and that he would need to file a visa extension to lawfully remain in the United States past December 12, 2011.  On or about October 27, 2014, defendant submitted an application for Deferred Action for Childhood Arrivals, which expired on or about November 28, 2016.  As such, SA Blackwell believes that when defendant possessed the two firearms and twelve 45mm caliber ammunition, he was an alien unlawfully present in the United States after having overstayed his visa.  Moreover, as an alien, defendant was legally not allowed to possess a firearm.

**F.   Interstate Nexus**

22. On or about April 24, 2025, ATF SA David Gonzalez, who is an ATF Firearms and Ammunition Interstate Nexus Expert, examined pictures of the firearms and ammunition of the

headstamps on the ammunition and the markings on the firearm recovered from defendant's arrest on April 6, 2025 to determine their make and origin. SA Gonzalez determined that the 2 firearms, 1 spent casing and 12 rounds of ammunition, all of which were found in defendant's possession, were all manufactured outside of California. Therefore, SA Gonzalez determined that for the firearms and ammunition to have been recovered in California, they had to have moved in interstate or foreign commerce.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

23. For all of the reasons described above, there is probable cause to believe that defendant has committed a violation of 18 U.S.C. § 922(g)(5), Alien in Possession of a Firearm.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 28th of April 2025.

*[signature]*

HONORABLE BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE